84   553
f88   518

## SCIPIO MARTIN *v.* ANTOINETTE MARTIN.

EXEMPT PROPERTY.   *Descent and distribution.   Widow's right.   Partition.*
*Rent, etc.   Code* 1892, § 1551; *amended laws* 1900, p. 129.   *Code* 1892,
§ 1553.

Under Code 1892, § 1551, as amended Laws, 1900, p. 129, and Code
1892, § 1553, regulating the subject, exempt property, real and
personal, left by a deceased husband descends to his widow and
children—grandchildren taking *per stirpes* the share of de-
ceased children—as tenants in common; but the widow has the
right to occupy and use the same, freed from liability for rent
or hire and from partition during her widowhood.

FROM the chancery court of, second district, Coahoma county.
HON. CAREY C. MOODY, Chancellor.

Scipio Martin, the appellant, was complainant, and Antoi-
nette Martin, appellee, was defendant in the court below.   From
a decree in defendant's favor the complainant appealed to the
supreme court.   The opinion states the facts of the case.

*J. W. Cutrer,* for appellant.

By the provisions of sec. 1551 the real and personal prop-
erty of the deceased on his death descended to the appellee and
the children of the decedent as tenants in common.   The estate
thus devolved upon them was an estate in fee, and each became
entitled to the same estate and to the same consideration ac-
cording to the express provisions of the statute.   Neither the
wife nor the children were given any advantage over the other,
but all were treated with exact equality, and their rights and
estates became fixed and vested upon the happening of the death
of the decedent.   They became tenants in common, with all the
rights and subject to all the burdens and inconveniences which
follow upon holding of an estate in common.   At the common
law there could have been only a voluntary partition of the
said lands so devolved upon them, the right of partition not

having been recognized at the common law as between co-tenants. 17 Am. & Eng. Ency. Law, 677.

Under some circumstances—in fact, under most circumstances of ownership of lands in common—partition is granted by the statute law of the state. Code of 1892, ch. 92.

If this were all the law upon the subject, the parties could at pleasure, under the circumstances of ownership disclosed by this record, have secured the partition and put an end to their co-tenancy; but as the property in question had been devolved upon these particular co-tenants by the death of the head of a household who had left a widow, the legislature has deemed it wise that the household shall not at once be broken into fragments, but that so long as the widow shall survive unmarried and desire to occupy the home, it shall not be subject to partition.

The obvious and natural view to take of the state of case presented by the record here in the light of the statutes is this: That sec. 1552 was designed only to engraft upon the chapter on partition an exception that in the particular state of case presented by this record partition of the homestead should not be had without the consent of the widow. Section 1553 cannot mean more than just that. By its terms it does not undertake to grant any estate to, or right or interest in, the lands which constitute a homestead. Its language is simply that of a negation or denial in the particular state of case presented to the tenants in common, other than the widow, of the recognized right to a partition of the homestead. No words are used which in any way diminish the equal rights of the co-tenants with the widow. There are no words used which operate to disseize the other co-tenants of any of the estate devolved upon them by law. These other co-tenants may hold, and she may hold her estate, in the homestead according to the rights fixed by the law of descent, and each must hold in recognition of, and with their respective rights subordinated to, the correlative and equal rights of the others. There is by the words of the

statute no grant of the rents, issues, and profits of the lands to the exclusive use of the wife.    The statutes, secs. 1551 and 1553, ought to be considered and construed together.

Under the statutes it must be deemed that the widow and children hold the exempt property in common in perfect equality, with no limitations upon the rights of the one or of the other to a fair and equal share of the property, and with all the rights incident to a common ownership.    The only limitation upon the rights of any of the parties was and is that partition which was not a right at the common law, but a privilege granted by the statute, and was by the effect of sec. 1553 withdrawn, so that the same could not be invoked by the children, and that the operation of sec. 1553 of the code, the operation of the statutes authorizing partition of lands, were limited in their operation so as to exclude therefrom the partition of land held by a particular tenure—that is, where the widow and children of a deceased exemptionist shall hold land as tenants in common during the widowhood of the widow, unless she shall expressly consent thereto.    Nothing is granted to the widow by the provisions of sec. 1553, and nothing is taken from the children—only this: It is provided that the statutes upon partition shall not apply to tenants holding property under the particular circumstances of ownership denominated by the statute.

Why should the law be otherwise?    The widow has no superior claims above the claims of the children; it is as vital that they should have a right to the occupation of the homestead in common as tenants of that class with the widow as that she should have a home in common with them; but there is no consideration which can move the court to say that she should and shall have the home of the deceased ancestor in preference to the children, and that the children shall take nothing; that she may occupy exclusively the homestead, and her children, her tenants in common, be deprived of all rights in the premises. There are so many variant and conflicting interests and claims which develop or arise after the death of the head of a family

that the law cannot and has not sought to discriminate as between the various objects of the bounty of the decedent. There may be left a loving mother, with young and dependent children; or there may be a matured stepmother, with a brood of her own. The law has not said that one shall have special consideration over the other, but it has announced and laid down the unvarying rule that under all circumstances the widow and children shall hold in common, and that the widow shall have the veto power when it comes to a partition of the estate.

Just as the statute has provided during the life of the husband, that while the wife has no interest or estate in the homestead, she has a veto power which will prevent the husband's disposing of or encumbering it without her consent. Code 1892, § 1983.

The contention advanced and insisted upon by the appellee goes to the limit. She is entitled to the exclusive occupation of the lands and to the entire rents, issues, and profits thereof—that is to say, her tenants in common are to be deprived of any right to share in the occupation of the property, and are at the same time to be deprived of the right to share in the rents, issues, and profits thereof. They may not occupy any portion of the lands and shall not have a farthing of the income.

*D. A. Scott,* for appellee.

Section 1551 of the code provides that all property, real and personal, exempt by law from sale under execution or attachment, descends to the widow and children (and by amendment, Laws 1900, p. 129, grandchildren) as tenants in common. Under this statute it is not to be doubted that the widow and surviving children or grandchildren of Louis Martin became tenants in common of the tract of land above mentioned, he having died intestate, subject, however, as we insist, to the right of the appellee, Antoinette Martin, as widow of Louis Martin, to

the exclusive use and occupation thereof during her widowhood, as provided for in sec. 1553 of said code.

The effort, however, of the appellant is to limit her use of this property to what is practically one-fifth of the same, for if he is entitled to one-fifth of the rents, issues, and profits, then the other heirs at law of Louis Martin would likewise be entitled to a one-fifth interest therein, thus leaving to the widow the remaining one-fifth. We insist, however, that the widow is entitled to use the homestead in any way she may deem proper, and may devote it to any use which would subserve her interest and at the same time carry out the clear intention of the statute last mentioned, which manifestly intended that she might not only occupy and use a part of the homestead for her support and maintenance during her widowhood, but that she might so use the whole of the same; and the manner in which she is thus authorized to use the homestead is left to her sole discretion and judgment, and about the only way in which she could use the same would be by appropriating the rents and profits to support and maintain her, keep the property in a good state of repair, and pay all taxes legally assessed against the same.

CALHOON, J., delivered the opinion of the court.

We handed down this case, affirmed without a written opinion. Yielding to request of counsel for appellant in his suggestion of error, we will proceed to write our views.

Louis Martin died intestate in 1900, leaving as heirs his widow, over 70 years old, and four children. At the time of his death he lived on the land about which this dispute arose, it being all the land he had, and had, as his family, living on it with him, his wife and two of his children. The other two children lived elsewhere. Since he died, one of the two children who lived with him on the land also died, leaving three children. This land, with some personal property of inconsiderable value, was exempt from execution in the hands of Louis Martin, and by law descended to his widow and children,

and the land was incumbered when he died by a mortgage to a loan company to secure his debt of about $600. Scipio Martin, one of the children not resident on the exemption, filed the bill in this cause against the widow and the three grandchildren and Rebecca Hopson, the other child not resident on the exemption, and Hettie Green, the other resident child. In this bill he prays that a receiver be appointed to take possession of the premises, rent it, pay the debts of Louis, and that then the rents, issues, and profits be decreed to him and the parties defendant according to their respective shares, and for partition similarly among the parties.

Other features are shown in this cause not necessary to be referred to in order to develop the point for decision. The question is as to the correct interpretation of Code 1892, § § 1551–1553, in reference to the rights of the widow in exempt property. We have examined the whole history of legislation in this state on the subject, the acts of 1839, 1846, 1852, 1860, 1865, and the codes, and all the decisions on each and all of them, and have reached a conclusion now to be stated, and which is dimly foreshadowed in *Middleton* v. *Claughton,* 77 Miss., 135 (24 South., 963), though it did not present the question we now have before us. However, it distinctly recognized it as a serious question.

Section 1551, Code 1892, which is the same as § 1277, Code 1880, provides that "the property, real and personal, exempted by law from sale under execution or attachment, shall, on the death of the husband or wife owning it, descend to the survivor of them and the children of the decedent, as tenants in common." The amendment in the acts of 1900, p. 129, ch. 89, simply brings in grandchildren to take *per stirpes.* Section 1553, Code 1892, is this: "Where a decedent leaves a widow to whom, with others, his exempt property, real and personal, descends, the same shall not be subject to partition or sale for partition during her widowhood, so long as it is occupied or used by the widow, unless by her consent." This sec-

tion does not appear in the revised code of 1880 or any other code of the state.

Exemption laws are designed for the welfare of families as families. It was not the purpose to have the property so that every one of a large family of children might compel a division between them and the widow of property not averaging in the state, perhaps, $500. This would result in stripping them of all of the means of support, and even of shelter. To require an account from the widow of the fruits of her "use or occupation" would, if the right were availed of, in nearly every instance, work the same calamitous result. In either case it would be as well, so far as any beneficent effect on the helpless is concerned, to let the creditors have it. By Acts 1865, p. 137, ch. 9, the widow took it all during widowhood, as against the heirs, and on her marriage or death it descended to the children. *Birmingham* v. *Birmingham,* 53 Miss., 610. Now she takes as a child does by descent an equal share of the fee, but cannot be compelled to partite or account for the user so long as it is "occupied or used" by her. This seems a wise provision. Laws are made to work the greatest good to the greatest number. None are perfect. The object was to protect families from want, and free some property from the grasp of creditors. In a very large majority of cases it is better that the widow take the place of the husband in the maintenance of the family, and this was the design of Code 1892, § 1553, and its language effectuates that design, and the propriety of it could not well be better illustrated than by the case at bar. The widow, who is entitled to protection herself, is left as head of the family, and is, as the husband was, entitled to undisturbed use and occupation during her widowhood and ownership of her share.

*Suggestion of error overruled.*